UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JENNIFER WATSON AND
JAMES WATSON

CIVIL ACTION NO.

VERSUS

22-CV-518-SDD-RLB

RUSHMORE LOAN MANAGEMENT,
LLC, ET AL.

## RULING

This matter is before the Court on the Motion to Dismiss pursuant to Rule 12(b)(6) filed by Defendant, Rushmore Loan Management Services, LLC ("Defendant" or "Rushmore").[1] Plaintiffs Jennifer and James Watson ("Plaintiffs"), filed an opposition,[2] to which Rushmore replied.[3] After careful consideration of the parties' arguments and the applicable law, for the following reasons, the Court grants in part and denies in part the Motion to Dismiss.

## I. RELEVANT BACKGROUND

Homeowner Jennifer Watson and her husband James Watson bring this suit against mortgage servicer Rushmore and several credit reporting agencies arising from disputes over the forbearance and deferral of mortgage payments. Jennifer Watson alleges Rushmore's violation of the Real Estate Settlement Procedures Act, 12 U.S.C. 2601, *et seq.*, ("RESPA") and breach of contract of her mortgage servicing agreement.[4] James Watson is suing Rushmore for violations of 15 U.S.C. 1681s-2, the provision of

---

[1] Rec. Doc. 34.
[2] Rec. Doc. 45.
[3] Rec. Doc. 46.
[4] Rec. Doc. 1, ¶ 1.

1

the Fair Credit Reporting Act ("FCRA") concerning the duties of those who furnish information to credit reporting agencies upon notification of a dispute.[5]

James and Jennifer Watson are married and share a home purchased by Jennifer Watson. Jennifer Watson is the mortgagor on the home loan; James Watson is not. The mortgage loan was originally serviced by Shellpoint Mortgage Servicing ("Shellpoint") and is currently serviced by Rushmore. Jennifer Watson alleges that she had a forbearance and/or deferral agreement with Shellpoint that deferred seven months of mortgage payments—for December of 2020 through June of 2021—until the end of her loan that Rushmore is now failing to honor.[6] She also alleges that, once Rushmore began servicing the loan, Rushmore agreed to extend her forbearance agreement with Shellpoint for another six months of mortgage payments—for July of 2021 through December of 2021—but later improperly refused to defer repayment of the payments which were the subject of forbearance until the end of her loan. She alleges that Rushmore's refusal to defer all of the payments that were in forbearance until the end of her loan was a breach of contract that caused her to lose an opportunity to refinance her mortgage at a lower interest rate.[7]

Jennifer Watson sent Rushmore dispute letters, also called qualified written requests ("QWR"s),[8] pursuant to the Cranston-Gonzales amendment to RESPA regarding the re-payment deferral she demanded. Rushmore responded denying the existence of any agreement to defer re-payment of payments that were in forbearance until the end of her loan term.[9] Jennifer Watson alleges that, in response to her QWR,

---

[5] Rec. Doc. 1.
[6] Rec. Doc. 1, ¶¶ 21-24.
[7] Rec. Doc. 1, ¶¶ 25-27.
[8] Jennifer Watson refers to the dispute letter as a "Notice of Error" while Rushmore refers to the same letter as a "QWR." This Ruling uses the latter term to denote the same dispute letter sent by Jennifer Watson to Rushmore.
[9] Rec. Doc. 1, ¶¶ 26, 28-29.

2

Rushmore instead should have taken corrective action by recognizing and acknowledging the deferral agreements as required by RESPA, which Rushmore did not.[10]

Per the Complaint, James Watson is not a co-borrower on the mortgage loan.[11] Allegedly, Rushmore nonetheless incorrectly reported James Watson as a co-borrower to several consumer reporting agencies.[12] James Watson notified the credit reporting agencies of the error, who, in turn, notified Rushmore of his dispute.[13] James Watson alleges that instead of correcting the erroneous report, Rushmore incorrectly verified that he was a co-obligor on the note to the credit bureaus, which he alleges violates the FCRA, 15 U.S.C. 1681s-2(b).

Rushmore filed a Rule 12(b)(6) Motion to Dismiss both James and Jennifer Watson's claims.[14] Rushmore argues that Jennifer Watson fails to state a RESPA claim against it because Rushmore complied with its obligations to respond to her QWR. In support of its motion, Rushmore attaches the subject QWR and QWR response.[15] Rushmore also seeks dismissal of Jennifer Watson's breach of contract claims because she failed to allege the existence of any written deferral or forbearance agreement. As for James Watson's claims, Rushmore argues that he failed to state a claim under 12 U.S.C. 1681s-2(b) because he failed to allege that Rushmore did not "conduct an investigation, correct inaccuracies, and notify reporting agencies of the results" upon notice of James Watson's dispute as required by that section.[16]

---

[10] Rec. Doc. 1, ¶ 30.
[11] Rec. Doc. 1, ¶ 15.
[12] Rec. Doc. 1, ¶ 36.
[13] Rec. Doc. 34-1, pp. 6-7.
[14] Rec. Doc. 34-1.
[15] Rec. Doc. 34-2, Exhibit 1 – Watson's QWR; Rec. Doc. 34-3, Exhibit 2 – Rushmore's QWR Response.
[16] Rec. Doc. 34-1, p. 16.

## II.     RULE 12(B)(6) STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[17] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[18] In *Twombly,* the Supreme Court explained "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[19] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[20] Instead, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21] In order to satisfy the plausibility standard, a plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[22] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[23] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[24]

---

[17] *In re Katrina Canal Breaches Litigation,* 495 F.3d 191, 205 (5th Cir. 2007) (internal citations omitted).
[18] *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).
[19] *Twombly,* 550 U.S. at 555 (internal citations and brackets omitted).
[20] *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations omitted).
[21] *Id.* at 678.
[22] *Id.*
[23] *Taha v. William Marsh Rice University,* No. H-11-2060 2012 WL 1576099 at *2 (S.D. Tx. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.,* 365 F.3d 353, 361 (5th Cir. 2004)).
[24] *Twombly,* 550 U.S. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

## III. ANALYSIS

### A. Jennifer Watson Fails to State a RESPA Claim

Jennifer Watson alleges that Rushmore violated Section 2605(e)(2) of RESPA when it did not correct her account in response to her QWR dispute letter claiming her mortgage payments were deferred to the end of her loan.[25] Jennifer Watson alleges that Rushmore responded to her QWR and denied that any of the payments in forbearance were deferred to the end of her loan.[26]

Rushmore argues that Ms. Watson failed to, and cannot, state a cause of action because Rushmore lawfully responded to her QWR. 12 U.S.C. 2605(e)(2) requires a mortgage servicer who receives a QWR from a borrower to respond in one of three ways. The servicer may either:

> **(A)** make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
> **(B)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
> > **(i)** to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
> > **(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> **(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
> > **(i)** information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

---

[25] Rec. Doc. 1, ¶¶ 28-30, 32
[26] Rec. Doc. 1, ¶ 29.

5

> **(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.[27]

Rushmore argues that it complied with RESPA under subsection (B) quoted above because its QWR response provided an explanation of why her account was correct, why she was denied payment deferrals and identified a Rushmore contact representative.[28]

In her opposition, Jennifer Watson argues that Rushmore ignores subsection B's requirement that it conduct a reasonable investigation before responding to a borrower's QWR.[29] Jennifer Watson, however, did not plead any factual allegations about the lack of or deficiencies in any investigation by Rushmore. Jennifer Watson's Complaint focuses on the fact that Rushmore allegedly failed to correct her account upon receipt of her QWR and, in conclusory fashion, alleges that she has "deep mental anguish that Rushmore will persist in not conducting a thorough investigation."[30]

The QWR and QWR response offered by Rushmore in support of its Motion, although extraneous to the four corners of the Complaint, will be considered by the Court because they are referenced in and central to the Complaint.[31]

The QWR and response are consistent with Jennifer Watson's allegation and demonstrate that Jennifer Watson sent Rushmore a QWR disputing that mortgage

---

[27] 12 U.S.C. § 2605 (e)(2).
[28] Rec. Doc. 34-1, pp. 2-3, 11-12.
[29] Rec. Doc. 45, p. 2.
[30] Rec. Doc. 1, ¶ 33.
[31] Rec. Doc. 1, ¶¶ 28-32. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) ("But because the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss." (citing *Causey v. Sewell Cadillac–Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir. 2004))); s*ee also Carter v. Target Corp.,* 541 F. App'x 413, 416–17 (5th Cir. 2013) (reviewing and considering EEOC charge documents attached to 12(b)(6) motion to dismiss) ("It is well-established that '[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'" (quoting *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir. 2000))).

payments which accrued during the forbearance period between December 2020 and December 2021 were due and that Rushmore responded to Jennifer Watson with an explanation of the status of her account, with reasons, and the contact information for a Rushmore representative.[32] The detailed information in Rushmore's QWR response is suggestive of an investigation and Ms. Watson's Complaint does not allege otherwise.

The Court finds that Jennifer Watson failed to plead facts that could lead to a plausible conclusion that Rushmore failed to comply with RESPA, 12 U.S.C. 2605(e)(2)(B).

Accordingly, the Motion to Dismiss Jennifer Watson's RESPA claims shall be granted.

### B. Jennifer Watson Failed to State a Breach of Contract Claim

Jennifer Watson claims that Rushmore breached their contract by refusing to defer all of the December 2020 through December 2021 mortgage payments to the end of the loan term pursuant to alleged forbearance agreements with Shellpoint, which she claims caused her to "los[e] the opportunity to refinance her home due to Rushmore's actions"[33] Rushmore argues that Ms. Watson fails to allege the existence of any written agreement as required by the Louisiana Credit Agreement Statute, La. R.S. 6:1122. Jennifer Watson counters that the forbearance was provided by the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") which she claims modified the terms of her note and mortgage by operation of law.[34]

---

[32] Rec. Doc. 34-2, pp. 3, 6-8; Rec. Doc. 34-3, pp.1-3.
[33] Rec. Doc. 1, ¶ 27; Rec. Doc. 34.
[34] Rec. Doc. 45, p. 3.

The Louisiana Credit Agreement Statute operates as a statute of frauds which precludes "'claims against lenders based upon oral agreements;' its effect is to bar 'all actions for damages arising from oral credit agreements, regardless of the legal theory of recovery asserted.'"[35]

Courts in this circuit routinely dismiss claims arising under Louisiana's Credit Agreement Statute where the non-moving party fails to plead the existence of a written agreement.[36] Jennifer Watson's complaint suffers the same defect. By her own allegations, she spoke with Rushmore about deferral of mortgage payments and Rushmore denied this oral request.[37] Similarly, she does not allege that she had a written deferral agreement with Shellpoint.

The Motion to Dismiss Jennifer Watson's breach of contract claim shall be granted.

### C. James Watson Has Stated an FCRA Claim Under 12 U.S.C. 1681s-2(b)

Rushmore moves to dismiss James Watson's FCRA complaint arguing that he did not allege that Rushmore failed to perform an investigation in response to his dispute letter regarding Rushmore's inaccurate reporting of James Watson as a co-borrower on Jennifer Watson's mortgage. James Watson counters that the lack of a reasonable investigation can be inferred from Rushmore's alleged continued erroneous reporting that James Watson was a co-borrower on the note.[38]

---

[35] *EPCO Carbon Dioxide Prod., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 469 (5th Cir. 2006) (quoting *Jesco Const. Corp. v. Nationsbank Corp.*, 2002-0057 (La. 10/25/02), 830 So. 2d 989, 992).
[36] *See, e.g., EPCO*, 467 F.3d at 471 (citing *Bolen v. Dengel*, 340 F.3d 300, 311–14 (5th Cir. 2003), *as amended* (Oct. 1, 2003)) (affirming summary judgment, converted from a 12(b)(6) motion, because plaintiffs have not plead the existence of a written contract and the alleged credit agreement attached to the third party claim was not signed by the plaintiffs as required by R.S. 6:1122); *Bonvillain v. United States,* No. 98-3369, 1999 WL 1072539, at *3 (E.D. La. Nov. 24, 1999); *Whitney Nat'l Bank v. Stack,* 1991 WL 255376, at *1 (E.D. La. Nov. 19, 1991)).
[37] Rec. Doc. 1, ¶¶ 21 and 23.
[38] Rec. Doc. 45, pp. 2-3.

As pertinent here, the FCRA imposes a duty on "furnishers of information"—such as Rushmore—to provide accurate information to the credit reporting agencies.[39] Under section 1681s-2(b), upon receiving notice questioning the completeness or accuracy of information furnished to a credit reporting agency, Rushmore was obliged to investigate and report the results of its investigation to the credit reporting agency. To state a claim under Section 1681s-2(b), James Watson must allege that: "'(1) [he] disputed the accuracy or completeness of information with a consumer reporting agency; (2) the agency notified the furnisher of the consumer's dispute; (3) and the furnisher failed to conduct an investigation, correct any inaccuracies, *or* notify the agency of the results of the investigation.'"[40]

James Watson alleges that he disputed the accuracy of Rushmore's reports that he was a co-borrower on the note. The credit reporting agencies notified Rushmore of the dispute, and, in response, Rushmore erroneously verified "that James Watson was obligated on this note when he was not."[41] James Watson does not allege any facts relative to the existence or nature of any investigation by Rushmore, but that is not required to state a claim. Section 1681s-2(b) mandates, in addition to the dispute and notice requirements, that a plaintiff allege that the furnisher either failed to conduct an investigation, correct any inaccuracies, or notify the agency of the results of the

---

[39] 15 U.S.C. § 1681s-2(b); *Hall v. LVNV Funding, L.L.C.*, 738 Fed. App'x. 335, 336 (5th Cir. 2018) (citing 15 U.S.C. § 1681s-2(a)).
[40] *Holliday v. U.S. Bank, Nat'l Ass'n*, No. 22-cv-00194-BAJ-RLB, 2023 WL 2543433, at *2 (M.D. La. Mar. 16, 2023) (quoting *Shaunfield v. Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 805 (N.D. Tex. 2014) (citing § 1681s-2(b)); s*ee also Block v. Real Time Resols., Inc.*, No. 3:20-cv-01592, 2021 WL 2559260, at *8 (W.D. La. June 8, 2021), *report and recommendation adopted*, No. 3:20-cv-01592, 2021 WL 2554919 (W.D. La. June 22, 2021).
[41] Rec. Doc. 1, ¶¶ 45-47.

9

investigation.[42] It is unnecessary to allege that Rushmore failed to fulfill all three of these requirements because failure to do any one of them in response to notice of the dispute is a violation of Section 1681s-2(b). Accordingly, James Watson's allegation that Rushmore did not correct its inaccurate reporting and continued to report that James Watson was obligated on the note to the credit reporting agencies, along with his allegations of his notice of dispute and notice to Rushmore, is sufficient to state a Section 1681s-2(b) claim against Rushmore.

Rushmore's Motion to Dismiss James Watson's claim under Section 16812-2(b) is denied.

### D. There is No Claim Under 12 U.S.C. 1681s-2(a)

Rushmore seeks dismissal of James Watson's claims under 12 U.S.C. 1681s-2(a) of the FCRA. However, James Watson did not plead or argue for any right to recovery under this section. In his opposition, James Watson aptly argues that the Court should not grant dismissal of a claim he has not asserted. The Court agrees.

Rushmore's Motion regarding 12 U.S.C. 1681s-2 is denied as moot.

---

[42] 15 U.S.C. § 1681s-2(b); *see also, e.g., Holliday*, 2023 WL 2543433, at *2 (M.D. La. Mar. 16, 2023) (internal citations omitted).

IV. **CONCLUSION**

For the reasons set forth above, Rushmore's Motion to Dismiss[43] is granted in part and denied in part. Plaintiff Jennifer Watson is granted twenty-one (21) days leave to amend her Complaint.

IT IS SO ORDERED.

Signed in Baton Rouge, Louisiana on September 25, 2023.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[43] Rec. Doc. 34.

11